**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LASHAN ARCENEAUX, INDIVIDUALLY, AND AS NEXT FRIEND OF M.O., A MINOR, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-17-3234 |
| KLEIN INDEPENDENT SCHOOL DISTRICT, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

LaShan Arceneaux, the mother of M.O., a minor, sued the Klein Independent School District and several teachers and administrators at Klein Oak High School, alleging that they violated M.O.'s rights by disciplining and harassing her for sitting during the recitation of the Pledge of Allegiance. The plaintiffs allege that the defendants failed to prevent continuing harassment and constitutional violations because they did not discipline school employees and allowed M.O. to be bullied by other students. The allegations include many incidents of discipline and harassment by four teachers (Benjie Arnold, Stephen Naetzker, Jennifer Walton, and Angie Richard) and three school principals (Lance Alexander, Kimberly Walters, and non-defendant Chad Crowson), over a three-and-a-half-year period, which caused Arceneaux to withdraw M.O. from Klein Oak in favor of home school. The plaintiffs allege that Arceneaux notified Klein ISD Superintendent Bret Champion that she had exempted M.O. from observing the Pledge recitation and that Klein Oak's response to the harassment was inadequate. Klein ISD's counsel sent Arceneaux a letter stating that the District's

1

written Pledge Policy allowed students to be excused from participating in the Pledge recitation. The plaintiffs allege that the harassment by teachers and students continued. In addition to the claims Arceneaux brings as M.O.'s next friend, she asserts an equal-protection claim in her individual capacity, alleging that the defendants treated her differently from other, similarly situated parents who wanted their children exempt from the requirement to stand and recite the Pledge.

At the initial pretrial conference held in February 2018, the court granted the plaintiffs leave to amend to more clearly address *Croft v. Perry*, 624 F.3d 157 (5th Cir. 2010), which held that the Texas statute on which the Klein ISD Pledge Policy is based did not violate the Establishment Clause, and to more clearly address municipal liability. The plaintiffs filed a second amended complaint, the defendants moved to dismiss, the plaintiffs responded, and the defendants replied. (Docket Entries No. 37, 39, 40, 43, 46, 47). The second amended complaint adds allegations against Angie Richard, a teacher and debate coach at Klein Oak, who allegedly retaliated against M.O. after this lawsuit was filed.

The allegations about the knowledge of the Klein ISD Board of Trustees, the District's policymaker, are that: (1) in November 2016, Arceneaux sent an email to Principal Brian Greeney and Superintendent Champion, informing them that the school was not adequately addressing the harassment; (2) in August 2017, the plaintiffs' counsel sent Superintendent Champion a letter stating that they intended to bring this lawsuit; and (3) after Klein ISD's outside counsel responded to that letter, and after M.O. filed this suit, the harassment continued. The plaintiffs argue that, based on a Klein ISD policy that requires the superintendent to "[k]eep the Board continuously informed on issues, needs, and operations of the District," the court can infer that Superintendent Champion reported the issue and the threat of litigation to the Board. At the motion-to-dismiss stage, these

allegations are enough to allow discovery on the policy or custom of requiring students to stand during the Pledge and of disciplining or harassing students who refused.

The second amended complaint asserts six causes of action: (1) a free-speech claim; (2) an Establishment Clause claim; (3) a free-exercise claim; (4) an equal-protection claim on M.O.'s behalf; (5) another equal-protection claim on LaShan Arceneaux's behalf; and (6) a due-process claim. Based on careful review of the pleadings; the motions, responses, and replies; the record; the applicable law; and the arguments of counsel, the motions to dismiss, (Docket Entries No. 39, 40, 46), are granted in part and denied in part. The free-speech claim, the free-exercise claim, and the equal-protection claim on M.O.'s behalf are adequately pleaded, and the plaintiffs have alleged enough facts on municipal liability to withstand dismissal. The due-process claim and the equal-protection claim on behalf of Arceneaux lack merit, and *Croft* forecloses the Establishment Clause claim. Count 2 (the Establishment Clause claim), count 5 (Arceneaux's equal-protection claim), and count 6 (the due-process claim) are dismissed, with prejudice and without leave to amend, because further amendment would be futile. Count 1 (the free-speech claim), count 3 (the free-exercise claim), and count 4 (M.O.'s equal-protection claim) are adequately pleaded and may go forward.

The reasons for these rulings are explained below.

## I.   Background

The Klein ISD Pledge Policy, which tracks a Texas statute, provides:

A board shall require students, once during each school day, to recite the pledges of allegiance to the United States and Texas flags.

On written request from a student's parent or guardian, a district shall excuse the student from reciting a pledge of allegiance.

(Docket Entry No. 37 ¶ 21).

At Klein Oak High School, the Pledge is recited every morning. M.O. is a 17-year-old student at Klein Oak who sits during and does not recite the Pledge. The plaintiffs allege several instances of harassment by school employees and students based on M.O.'s refusal to stand during the Pledge.

In September 2014, in Stephen Naetzker's World Geography class, M.O. sat during the Pledge. Naetzker issued M.O. a write-up and sent her to Principal Kimberly Walters's office. Principal Walters told M.O. that because of Naetzker's military service, he had the right to write her up for not standing during the Pledge. On November 26, 2014, Naetzker confiscated M.O.'s phone because she demonstrated a "lack of respect" by sitting during the Pledge. (*Id.* ¶ 35). At the end of the day, Naetzker gave M.O.'s phone to Principal Walters, who returned it to M.O. and told her that they would discuss the issue after the Thanksgiving break. M.O. alleges that Principal Walters took no action against Naetzker and did not discuss the issue with her after the break. The plaintiffs also allege that, on several occasions in the spring 2015 semester, Naetzker read Bible passages to the World Geography class.

In the fall semester of 2015, Jennifer Walton, the Journalism teacher, instructed M.O. to stand during the Pledge. M.O. refused. After M.O. and Walton discussed the issue, Walton allegedly "singled out" M.O. for sitting, and again instructed her to stand. M.O. again refused. Walton continued to "single M.O. out" and instruct her to stand during the Pledge throughout the semester; M.O. continued to sit. M.O. talked to the school guidance counselor, Margaret Bollato, who recommended that "M.O. either stand for the Pledge in Walton's class or switch out of Walton's class at the winter break in order to avoid the conflict." (*Id.* ¶ 42). M.O. switched out of the class between the fall and spring semesters.

In the spring semester of 2016, M.O. was walking in the hall when the Pledge recitation began on the intercom system. M.O. encountered Principal Lance Alexander, who instructed her to stop walking during the Pledge. When M.O. continued walking, Principal Alexander "rolled his eyes and made a disapproving noise." (*Id.* ¶ 46). The same day, M.O. spoke with Principal Walters about the incident and asked Walters to tell Principal Alexander and others that M.O. did not have to stop walking during the Pledge.

In the summer of 2016, Arceneaux and M.O. met with Dr. Brian Greeney, a new principal at Klein Oak, to discuss steps to avoid conflicts over the Pledge. Principal Greeney assured them that nothing would happen in the coming school year and that he would speak to the teachers and staff in training sessions before the year began.

On November 11, 2016, Veteran's Day, M.O. sat during the Pledge. While the teacher was out of the classroom, another student, H.R., stood up and called M.O. a "bitch." (*Id.* ¶ 52). Later that day, H.R. posted photos of M.O. on social media with a caption stating: "[l]ike if you don't respect country then get the fuck out of it." (*Id.* ¶ 53). Arceneaux sent Principal Walters an email expressing concerns about her daughter's treatment, and asking her to address the issue, adding: "I will stand behind my daughter's right to not say the pledge (in a silent, respectful manner)." (*Id.* ¶ 54). The same day, H.R. apologized to M.O. in Principal Walters's office. Three days later, Arceneaux sent an email to Principal Greeney and Klein ISD Superintendent Bret Champion, stating that the school's response to the issue was inadequate.

On December 9, 2016, H.R. encountered M.O. and said to a classmate, in front of M.O., "[t]here's that bitch that sits for the Pledge." (*Id.* ¶ 58). After hearing about the second incident between M.O. and H.R., Arceneaux telephoned Principal Walters, asked her to meet to discuss the

incident, and stated in the phone call that she was considering legal action against the school district. M.O. came to Principal Walters's office during the phone call. After Arceneaux stated that she was considering a lawsuit, Principal Walters called for backup. Other school principals and armed school police officers arrived and waited outside Principal Walters's office. After Arceneaux and Principal Walters finished talking on the phone, the principals and officers escorted M.O. to her classroom to gather her things and to the door, until Arceneaux could come to Klein Oak to discuss the incident. As M.O. was escorted out, Principal Crowson (not a defendant) "accused M.O. of acting like a criminal." (*Id.* ¶ 64). When Arceneaux arrived, she talked with M.O. and Principal Greeney. Arceneaux reiterated her intent to sue the school district. The next day, H.R. was removed from the classes she shared with M.O. for the rest of the semester.

On the first day of the spring semester of 2017, Principal Greeney removed M.O. from Benjie Arnold's Sociology class to avoid a conflict between them over M.O. sitting during the Pledge. Shortly after, Arceneaux withdrew M.O. from Klein Oak in favor of home schooling. Arceneaux incurred $10,000 in home schooling costs.

In a letter dated August 15, 2017, Arceneaux informed Klein Oak that M.O. would be returning to school for the 2017–2018 academic year and asked Principal Thomas Henley "to ensure that [M.O.'s] constitutional rights are respected during her final year at Klein Oak." (*Id.* ¶ 80). In an August 22, 2017 letter, Klein ISD's outside counsel responded that "KISD Policy allows a student to be excused from participation in the Pledge of Allegiance," and that school administrators were "aware [M.O. would be] returning to Klein Oak High School, and they are pleased that she is." (*Id.* ¶ 81).

When M.O. returned to Klein Oak, she experienced several Pledge-related incidents. On

August 24, 2017, Arnold told M.O. and the other students in the class that standing for the Pledge was a privilege, not a right, and that people who sit for the Pledge were "unappreciative," "disrespectful," and "take from society."  (*Id.* ¶ 85).  On September 20, 2017, Arnold played Springsteen's "Born in the U.S.A."  Arnold apparently did not listen to the words or he did not understand them.  He instructed the class to write down how the song made them feel.  He also gave the students a timed writing assignment to write down the words of the Pledge of Allegiance, which, predictably, M.O. did not complete.  Arnold told the class that those who did not complete the Pledge assignment would receive a zero.  He compared people who refuse to say the Pledge to "Soviet communists, members of the Islamic faith seeking to impose Sharia law, and those who condone pedophilia."  (*Id.* ¶ 87).  Throughout the semester, Arnold was harsher toward M.O. than other students, berating her for wrong answers and making her move her desk into the middle of the aisle.

The plaintiffs allege that Angie Richard, a teacher and debate coach, retaliated against M.O. based on this case.  Soon after this suit was filed, Richard intervened to prevent students from talking with M.O. about the case.  At a weekend debate-team event at Klein Oak, another student, J., told M.O. to "go fuck off" and to "go fuck yourself."  (*Id.* ¶ 90).  M.O. reported the incident to Richard.  Although J. admitted making the statements, Richard told M.O. not to report the incident to the school until the following Monday, to avoid giving the school a bad reputation at the debate event.  J. was not disciplined for these actions.

In December 2017, another student stole food from M.O.'s bookbag during Richard's class.  The student admitted the theft to Richard but received no discipline.  The same month, Richard repeatedly asked M.O. for details about her lawsuit and about how students were treating her.  When

M.O. refused to discuss the case, Richard threatened to send her to the principal's office, and at one point shouted "[f]ine, just ignore me" during class time. (*Id.* ¶ 95). Richard also allegedly withheld information about debate-team events from M.O., demoted M.O. on the debate team, told other students that M.O. was "a liar," and finally stopped speaking with M.O. and communicated with her only through student intermediaries. (*Id.* ¶ 98).

The plaintiffs assert six causes of actions: First Amendment claims for violations of the Free Speech, Establishment, and Free Exercise clauses; an equal-protection claim on M.O.'s behalf; an equal-protection claim on LaShan Arceneaux's behalf; and a due-process claim. The plaintiffs seek damages under § 1983 and an order "that Klein ISD immediately instruct each and every employee that students have the right to choose not to stand for the Pledge; to appropriately discipline any Klein ISD employee [who] interferes with the exercise of that right; and to put procedures in place to ensure that all requests by parents that a student be exempt from the [Pledge Policy] are honored."

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.

The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The court can also consider government documents and similar matters of public record without converting the motion into one seeking summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366); *Jathanna v. Spring Branch Indep. Sch. Dist.*, 2012 WL 6096675, at *3 (S.D. Tex. Dec. 7, 2012).

## III.     Analysis

### A.     Municipal Liability

The Klein ISD Pledge Policy states:

A board shall require students, once during each school day, to recite the pledges of allegiance to the United States and Texas flags.

On written request from a student's parent or guardian, a district shall excuse the student from reciting a pledge of allegiance.

(Docket Entry No. 37 ¶ 21).  The Pledge Policy tracks § 25.082 of the Texas Education Code.

The plaintiffs make two arguments for municipal liability.  First, they argue that the Pledge Policy, on its face, establishes municipal liability because the parental-notification provision is unconstitutional.  Second, the plaintiffs argue that Klein Oak's implementation of the Policy amounts to a custom or practice of requiring students to stand during the Pledge and of disciplining students who refuse to do so.

### 1.     Municipal Liability Based on an Unconstitutional Written Policy

The plaintiffs argue that, even though the Fifth Circuit held that the statute on which the Pledge Policy is based did not violate the Establishment Clause, the Policy's parental-notification requirement is nonetheless unconstitutional.  "The choice of a student to engage or not in patriotic exercise belongs to the student alone. [The Policy] forces students whose deeply held convictions are at odds with the recitation of the pledge to nonetheless participate in the recitation unless (and until) a parent endorses their child's view in writing."  (Docket Entry No. 43 at 16–17).

An Eleventh Circuit case considered a similar statute.  In *Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279, 1283 (11th Cir. 2008), the court held that the statute's parental-notification provision—"[u]pon written request by his or her parent, the student must be excused from reciting

the pledge"—was constitutional because "the State's interest in recognizing and protecting the rights of parents on some educational issues is sufficient to justify the restriction of some students' freedom of speech." *Id.* at 1285.

The Third Circuit considered a slightly different parental-notification provision that required the school to notify a parent *after* a student opted out of reciting the pledge. *Circle Schs. v. Pappert*, 381 F.3d 172 (3d Cir. 2004). The court applied strict scrutiny to that requirement and held that "the Commonwealth's stated interest of parental notification is simply not 'so compelling of an interest' as to justify the viewpoint discrimination that significantly infringes students' First Amendment rights." *Id.* at 181.

The Fifth Circuit has not decided this issue, and no other circuit case is directly on point. The issue does not require resolution here because M.O. does not have standing to assert this challenge. Although "standing requirements are somewhat relaxed in First Amendment cases," *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (collecting authority), the second amended complaint alleges that Arceneaux sent a written request to exempt M.O. from reciting the Pledge. (Docket Entry No. 37 ¶¶ 54, 130). The District Policy, as written, did not violate M.O.'s rights because it did not require her to put her sincerely held beliefs at odds with those of her mother. M.O. lacks standing to assert this facial challenge.

### 2. Municipal Liability Based on a Practice or Custom

A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiffs'] injury. . . ." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Relief under § 1983 against a municipality requires "a plaintiff

[to] show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). "A policy is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation." *Id.* (citing *Piotrowski*, 237 F.3d at 580). "In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation." *Id.* If a plaintiff cannot show that the policy itself is facially unconstitutional, he must show the policy was "adopted with deliberate indifference as to its known or obvious consequences." *Id.* "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *Id.* at 617–18 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

"Municipal liability cannot be sustained under a theory of *respondeat superior*. [T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost

never trigger liability." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (alteration in original) (citing *Brown*, 520 U.S. at 403; *Piotrowski*, 237 F.3d at 578).

"Texas law unequivocally delegates to [a school district's] Board [of Trustees] 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Id.* (quoting TEX. EDUC. CODE ANN. § 11.151(b)). "[F]inal policymaking authority in an independent school district rests with the district's board of trustees, not the Superintendent." *Rodriguez v. Hous. Indep. Sch. Dist.*, 710 F. App'x 196, 198 (5th Cir. 2018).

At the motion-to-dismiss stage, factual allegations as to the municipal policy or custom "need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011).

Klein ISD argues that the plaintiffs have pleaded "no factual allegations supporting the conclusion that KISD's Board of Trustees had an unconstitutional customary policy or was even aware of the actions plaintiffs attribute to KISD's employees. In particular, plaintiffs do not plead that any of the actions they complain of were the result of a policy or custom, let alone a policy officially adopted by KISD's Board . . . or widespread custom to which the Board acquiesced." (Docket Entry No. 40 at 10). According to Klein ISD, the plaintiffs' allegations attempt to hold the school district liable under a *respondeat superior* theory.

The plaintiffs' allegations support an inference that Klein ISD had an unwritten custom or practice of requiring students to stand during the Pledge and of disciplining and harassing students who refused to stand. The plaintiffs do not quite brief it in these terms. Instead, they argue that the written Pledge Policy is the cause of the violation of M.O.'s constitutional rights, because Klein Oak implemented the Policy, and Klein ISD was deliberately indifferent to those violations. But the

written Pledge Policy is not the problem.  It tracks the Texas law, which the Fifth Circuit upheld, that allows students to opt out of reciting the Pledge.  The better argument supported by the complaint allegations is that there is an unwritten custom or practice of implementing the Policy to require students to stand during the Pledge and of disciplining students who refuse.

The plaintiffs point to several specific incidents supporting this custom or practice: (1) an official write-up by Naetzker when M.O. sat during the Pledge; (2) Principal Walters' reference to Naetzker's military service to justify that write-up; (3) Naetzker's confiscation of M.O.'s phone for her "lack of respect" in sitting during the Pledge; (4) selective application of the Klein ISD bullying policy with regard to H.R. and J.; (5) repeated verbal instructions from Walton to M.O. to stand during the Pledge; (6) Arnold's comparison of those who refuse to say the Pledge with Soviet communists, pedophiles, and Sharia-law supporters; and after this case was filed, (7) Richard repeatedly asked M.O. about the case, calling M.O. a liar, and demoting M.O. to a worse position on the debate team.

The Klein ISD Board of Trustees is the final policymaker for the District.  The plaintiffs' allegations about the Board's knowledge are that: (1) in November 2016, Arceneaux sent an email to Principal Greeney and Superintendent Champion, informing them that the school was not adequately addressing the harassment; (2) in August 2017, the plaintiffs' counsel sent a letter to Superintendent Champion stating that the plaintiffs intended to sue; and (3) after Klein ISD's outside counsel responded to that letter and after this case was filed, the harassment continued.  A Klein ISD policy requires the superintendent to "[k]eep the Board continuously informed on issues, needs, and operations of the District."  (Docket Entry No. 43, Ex. A).  The plaintiffs argue that, based on the superintendent's obligation to report to the Board, the court can infer that Superintendent Champion

told the Board about the ongoing issues at Klein Oak and the threatened litigation.

The plaintiffs have alleged sufficient facts to support a plausible inference that Klein Oak's acts of requiring a student to stand during the Pledge, and disciplining and harassing a student who refused, were "a widespread practice of [Klein ISD] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *James*, 577 F.3d at 617. Although "[i]solated violations of law by [a school's] employees cannot constitute a custom or policy by the [school district's] Board of Trustees," *Penny v. New Caney Indep. Sch. Dist.*, 2013 WL 2295428 (S.D. Tex. May 23, 2013), the plaintiffs have alleged a repeated and continuous pattern of incidents based on M.O. sitting during the Pledge. M.O. was subjected to official discipline on several occasions; teachers harassed her and other students cursed at and bullied her; they were not disciplined; M.O. was removed from a class to avoid a conflict with a teacher who had harassed her; and even after Arceneaux met with school administrators, sent an email to the superintendent, and filed this suit, Klein ISD allegedly did not fix the problems. After receiving assurances from Klein ISD's outside counsel when M.O. returned to the school after a semester of home schooling, M.O. was again subjected to insults and discipline for sitting during the Pledge. After this lawsuit was filed, Richard called M.O. a liar, repeatedly asked her to talk about the lawsuit, and demoted her on the debate team.

The plaintiffs have not alleged that the Klein ISD Board had direct knowledge of these incidents. But at the motion-to-dismiss stage, the factual allegations, including that the harassment was repeated, that no discipline resulted, and that the harassment continued after M.O. returned to school, after Arceneaux threatened litigation to the superintendent, and after this case was filed,

support a plausible inference that the Board was on notice of, and deliberately indifferent to, a custom or practice at Klein Oak of disciplining and harassing students for not standing during the Pledge, despite a written parental request to exempt a student from observing the Pledge recitation.

## B.     The First Amendment Claims

### 1.     The Free-Speech Claim

The defendants do not argue that the free-speech claim fails as a matter of law.  The motions to dismiss argue only that the plaintiffs have not adequately alleged a custom or practice for the purpose of § 1983 liability.  (Docket Entry No. 40 at 6–10).  Because the plaintiffs have adequately alleged a custom or practice of disciplining and harassing a student who refused to stand during the Pledge, the motion to dismiss the free-speech claim is denied.  *See W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("We think the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.").

### 2.     The Establishment Clause Claims

The plaintiffs argue that the Pledge Policy violates the Establishment Clause.  *Croft* forecloses this claim.   In *Croft*, the Fifth Circuit considered a facial challenge under the Establishment Clause to the Texas Pledge, which contains the same "under God" language as the national Pledge.  The court reviewed Supreme Court and circuit precedent on the national Pledge, noting that the Fifth Circuit had "recognized, in dicta, the national pledge's likely constitutionality." *Croft v. Perry*, 624 F.3d 157, 165 n.2 (5th Cir. 2010) (citing *Doe v. Tangipahoa Par. Sch. Bd.*, 473 F.3d 188, 198 (5th Cir. 2006)).  Using the national-Pledge precedent as persuasive authority, the

court considered the constitutionality of the Texas Pledge under the Establishment Clause using the "multi-test" analysis. The court held that the Texas Pledge and the statute requiring its recitation did not violate the Establishment Clause because the Pledge was a patriotic exercise, not a religious one:

> In summary, neither Texas's state pledge . . . nor the provision of its educational code requiring its recitation by school children, TEX. EDUC. CODE ANN. § 25.082, violates the Establishment Clause. The pledge is a patriotic exercise, and it is made no less so by the acknowledgment of Texas's religious heritage via the inclusion of the phrase 'under God.' A pledge can constitutionally acknowledge the existence of, and even value, a religious belief without impermissibly favoring that value or belief, without advancing belief over non-belief, and without coercing participation in a religious exercise. Texas's pledge is of this sort and consequentially survives this challenge.

*Croft*, 624 F.3d at 170. *Croft* remains good law. Twelve cases have cited it, and no case repudiates it.

To avoid the conclusion that *Croft* bars their claims, the plaintiffs argue that *Croft* was a facial challenge to the statute, while the challenge here is to the statute as applied. This argument does not get around the sweeping language in *Croft* that the Pledge "is a patriotic exercise and it is made no less so by the acknowledgment of Texas's religious heritage via the inclusion of the phrase 'under God'" and that the Pledge can "constitutionally acknowledge the existence of, and even value, a religious belief, without advancing belief over non-belief, and without coercing participation in a religious exercise." *Id.* Even in this as-applied challenge, the plaintiffs' primary argument is that the daily recitation of the Pledge violates the Establishment Clause. The Fifth Circuit has rejected that argument.

In their response to the motions to dismiss, (Docket Entry No. 43), the plaintiffs also argue that Naetzker violated the Establishment Clause by reading Bible passages in class. Under the

*Lemon* test, or under the Fifth Circuit's "multi-test" Establishment Clause analysis, the occasional reading of Bible passages by a World Geography teacher does not violate the Establishment Clause. *See Stone v. Graham*, 449 U.S. 39, 42 (1980) ("[T]he Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like."); *Freiler v. Tangipahoa Par. Bd. of Educ.*, 185 F.3d 337 (5th Cir. 1999) ("[I]t is not per se unconstitutional to introduce religion or religious concepts during school hours . . . ."). The reading likely does not have the "primary effect" of advancing or inhibiting religion and it likely does not "create excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). It also likely does not violate the endorsement test set out in *Lynch v. Donelly*, 465 U.S. 668, 575 (1985), nor does it seem likely to coerce religious belief, as prohibited by *Lee v. Weisman*, 505 U.S. 577 (1992).

The Establishment Clause claims are dismissed, with prejudice, because amendment would be futile.

### 3.      The Free-Exercise Claim

The defendants argue that, because *Croft* held that the Pledge statute was constitutional, the plaintiffs' free-exercise claim, in addition to the Establishment Clause claim, must fail. The plaintiffs correctly point out that *Croft* was a facial challenge to the Pledge statute under the Establishment Clause. The *Croft* court did not consider a free-exercise claim or mention the Free Exercise Clause in the opinion. The defendants do not argue that the free-exercise claim fails as a matter of law. Because the defendants' only argument is that the free-exercise claim is foreclosed by *Croft*, and because *Croft* did not consider a free-exercise claim, the motion to dismiss that claim is denied, and it may proceed.

18

### C.    The Fourteenth Amendment Claims

#### 1.    Arceneaux's Equal-Protection Claim

Arceneaux's equal-protection claim, brought in her individual capacity, is that the defendants treated her differently from similarly situated parents who exempted their children from the District's Pledge Policy in writing.  The allegations in the second amended complaint are about how M.O. was disciplined and treated more harshly than other students.  There are no allegations that the defendants discriminated against Arceneaux; her claims are derivative of M.O.'s constitutional claims.  Nor do the plaintiffs allege that there were other, similarly situated parents who exempted their children and who were treated better than Arceneaux.  *See Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) ("The Equal Protection Clause forbids state actors from treating similarly situated individuals differently *for a discriminatory purpose* and without a rational basis." (emphasis in original)).  Arceneaux's equal-protection claim is dismissed, with prejudice, because amendment would be futile.

#### 2.    M.O.'s Equal-Protection Claim

The defendants argue that M.O.'s equal-protection claim fails because it mirrors her First Amendment claim.  In support, the defendants cite *Brindson v. McAllen Independent School District*, 863 F.3d 338, 347–48 (5th Cir. 2017).  In that case, the Fifth Circuit did not consider an equal-protection claim that mirrored a First Amendment claim.  The context of the court's discussion is helpful:

> Brindson makes these claims against [the defendants]: (1) her First Amendment right to be free from compelled speech was violated; (2) she suffered retaliation based on her First Amendment protected speech when she was removed from her class; and (3) she was treated unequally in violation of the Equal Protection Clause.  We will discuss the first two claims later.  As to the third, we do not separately discuss it inasmuch as the equal-protection argument and the First Amendment retaliation

argument mirror each other. That is "because the substantive guarantees of the [First] Amendment serve as the strongest protection against the limitation of these rights. . . . . [If the defendants' actions] survive substantive review under the specific guarantees [of the First Amendment,] they are also likely to be upheld under an equal protection analysis. . . ." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 226 n.9 (5th Cir. 2009). As we will discuss later, we uphold the grant of qualified immunity on Brindson's two First Amendment arguments. Consequently, we extend that holding to the equal-protection claim.

*Brindson*, 863 F.3d at 347–48 (brackets in original).

*Brindson* does not support the defendants' argument that M.O.'s equal-protection claim must be dismissed because it mirrors the First Amendment claim. *Brindson* reviewed a summary judgment ruling, not a ruling on a motion to dismiss. The court held that the equal-protection claim failed as a matter of law because the underlying First Amendment claim failed as a matter of law. In contrast, the plaintiffs here have pleaded a plausible First Amendment free-speech claim based on Klein Oak's discipline and harassment of M.O. in retaliation for her expressive conduct. Those allegations also support an equal-protection claim that M.O. was treated more harshly than other students based on her beliefs.

The defendants next argue that M.O. has not pleaded facts showing that she was treated differently or discriminated against based on her membership in a protected class. The defendants argue that M.O. does not identify similarly situated individuals who were treated better than she was. *See Williams v. Riley*, 275 F. App'x 385, 390 (5th Cir. 2008) (dismissing class-of-one equal-protection claim because the plaintiffs did not allege that "they were treated differently than similarly-situated individuals. Rather, they alleged being treated differently than those who did not report the same type of conduct (*i.e.*, did not engage in purported protected speech)"). M.O. alleges that "Lance Alexander, Benjie Arnold, Stephen Naetzker, Jennifer Walton, Angie Richard, and Kimberly Walters singled M.O. out, subjected her to derision and opprobrium, and otherwise

discriminated against M.O. for her sincerely held beliefs, exhibited by her choice to refrain from participating in the daily recitation of the Pledge." (Docket Entry No. 37 ¶ 111). The allegations that M.O. was "singled out," including a write-up for sitting during the Pledge, and was the target of derogatory comments, including a comparison to "Soviet communists, members of the Islamic faith seeking to impose Sharia law, and those who condone pedophilia," support an inference that M.O. was treated more harshly than other students, based on her beliefs. At this stage, M.O. has sufficiently alleged a plausible equal-protection claim.

### 3. M.O.'s Due-Process Claim

M.O.'s due-process claim is based on Naetzker confiscating her cell phone. Principal Walters returned M.O.'s cell phone at the end of the school day and told M.O. that they would discuss the phone-confiscation incident after the Thanksgiving break. The discussion never happened.

The plaintiffs argue that this incident is a due-process violation because M.O.'s property was taken without a hearing. The claim fails because Principal Walters returned M.O.'s phone. No deprivation of property is alleged.

In the response to the motion to dismiss, the plaintiffs also allege that Naetzker "damaged M.O.'s good name and reputation by disciplining her without cause in front of other students" without a hearing. (Docket Entry No. 43 at 15–16). The Fifth Circuit has held that individuals do not have "a protected liberty interest in [their] reputation and good name as a matter of law" because "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 347 (5th Cir. 2008) (quoting *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 561 n.3 (5th Cir. 2003)). Because M.O. has not alleged

an infringement of a protected liberty interest, the due-process claim is dismissed, with prejudice, because amendment would be futile.

**III.  Conclusion**

The motions to dismiss, (Docket Entries No. 39, 40, 46), are granted in part and denied in part.  Count 2 (the Establishment Clause claim), count 5 (Arceneaux's equal-protection claim), and count 6 (the due-process claim) are dismissed, with prejudice.  Count 1 (the free-speech claim), count 3 (the free-exercise claim), and count 4 (M.O.'s equal-protection claim), may proceed.

SIGNED on May 22, 2018, at Houston, Texas.

Lee H. Rosenthal
United States District Judge