IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MARI OLVER,** | )( |
| | )( |
| *Plaintiff,* | )( |
| | )( |
| **v.** | )( Civil Action No.: 4:17-cv-3234 |
| | )( **(Jury trial)** |
| | )( |
| **KLEIN ISD**, *et al.,* | )( |
| | )( |
| *Defendants.* | )( |

# JOINT PRETRIAL ORDER

## Appearance of Counsel

List the parties, their respective counsel, and the addresses and telephone numbers of counsel (including e-mail addresses) in separate paragraphs.

Plaintiff, Mari Oliver, represented by:

Geoffrey T. Blackwell
American Atheists Legal Center
1201 S. Courthouse Rd. #425
Arlington, VA 22204
Phone: (908) 276-7300, ext. 310
Fax: (908) 344-3927
Email: GBlackwell@atheists.org

Randall L. Kallinen
U.S. Southern District of TX Bar No.:19417
State of Texas Bar No. 00790995
Alexander Johnson
State of Texas Bar No. 24123583
U.S. Southern District of TX Bar No.: 3679181
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77012

Telephone:  713.320.3785
FAX:        713.893.6737
Email:      AttorneyKallinen@aol.com


Defendant, Benjie Arnold, represented by:

Thomas P. Brandt
Francisco J. Valenzuela
Fanning Harper Martinson Brandt & Kutchin, P.C.
Two Energy Square
4849 Greenville Ave. Ste. 1300
Dallas, TX 75206
Telephone:   214-369-1300
FAX:   214-987-9649
Email: tbrandt@fhmbk.com
Email: fvalenzuela@fhmbk.com


## Statement of the Case

Plaintiff's Statement of the Case

During the 2017-2018 school year, Plaintiff Mari Oliver was a senior at Klein Oak High School, a school within Klein ISD in Spring, Texas. Defendant Benjie Arnold is a teacher at Klein Oak High School. Throughout high school, Mari Oliver regularly refrained from participating in the daily recital of the Pledge of Allegiance. Mari Oliver alleges that Defendant was made aware of this no later than August 17, 2017, during a meeting between Klein Oak High School Assistant Principal Kimberly Walters and Ms. Oliver's teachers, prior to the start of the school year. Ms. Oliver alleges that on August 24, 2017, the Defendant described in derisive terms his opinion of people who do not recite the Pledge of Allegiance. She further alleges that, on September 20, 2017, the Defendant compelled her to write the Pledge of Allegiance and that he did so with the intent to inculcate in her his own political views and beliefs. Ms. Oliver further alleges that on the following day, September 21, 2017, and repeatedly for the rest of the semester, the Defendant engaged in a pattern of behavior in retaliation for her refusal to conform to his political ideology.

As a result of the Defendant's actions, Ms. Oliver suffered mental anguish for which she receives regular mental health treatment. She seeks damages from the

Defendant to compensate her for the harms she has suffered as a result of his actions.

This trial will resolve two issues: First, whether the Defendant's actions violated Ms. Oliver's First Amendment right to free speech and, second, what compensation she is entitled to as a result of those violations.

Defendant's Statement of the Case

Mr. Benjie Arnold is a teacher. He has taught for more than 50 years. He teaches at Klein Oak High School. Ms. Mari Oliver was one of his students during the fall semester of 2017. She was a student in his first period Sociology class.

Before, during and after Ms. Oliver's high school years, the daily recitation of the Pledge of Allegiance was required by Texas law. In the fall of 2017, the recitation of the Pledge of Allegiance took place each day during the second period.

At the beginning of every semester, Mr. Arnold gave his students a syllabus which explained, in writing, his expectations for their behavior in class. Each semester, he told his students that he expected to be able to see their eyes during class. Each semester, Mr. Arnold instructed his students that if he could not see their eyes, he would either: (1) remind them to look forward; or (2) ask them to switch seats or move their desks.

Mr. Arnold teaches Sociology at Klein Oak High School. He has taught Sociology there for many years. Sociology is a one-semester class. Students can take Sociology in the fall or spring semester. Sociology is a subject which

involves the discussion of many sensitive and controversial subjects. As part of the Sociology curriculum, Mr. Arnold has, for many years, assigned his students standard in-class writing assignments.

One of Mr. Arnold's standard in-class writing assignments is, essentially, as follows: "Write down as many of the words to the Pledge of Allegiance as you can remember in one minute." This standard in-class writing assignment was an ungraded assignment. In other words, although the assignment was supposed to be attempted, it did not have any effect on the student's grade.

During his many years of experience teaching and his many years of experience giving his students this standard in-class assignment, Mr. Arnold has discovered that most of his students cannot write, from memory, the words of the Pledge of Allegiance even though every day they have recited it or heard it being recited.

Before Ms. Oliver became a student at Klein Oak High School and during the time she attended high school at Klein Oak High School, Mr. Arnold chose to pair his standard, in-class writing assignment regarding the Pledge of Allegiance with the playing of Bruce Springsteen's song, "Born in the U.S.A." After playing the song for his students, Mr. Arnold would require his students to write a brief reflection on the song.

Mr. Arnold's purpose with respect to both assignments, the Pledge assignment and the Springsteen assignment, was to have his students realize that we often repeat words without reflecting on them or understanding them. Semester after semester, Mr. Arnold's experience remained the same -- the vast majority of his students, who recited the Pledge every day, could not write down the words to the Pledge and the vast majority of his students, who were familiar with the Springsteen song, did not understand the song's meaning.

In the fall semester of 2017, Mr. Arnold taught six sections of Sociology i.e., he taught Sociology to six different classrooms of students during six different periods. In September of that school year, Mr. Arnold gave the exact same two in-class assignments to each of his six sections of Sociology. He gave each of his classes the assignment regarding the Pledge of Allegiance and the assignment regarding the Springsteen song.

Ms. Oliver, who during her freshman year had decided that she would not recite the Pledge of Allegiance or stand while others recited it, refused to comply with the requirements of the Pledge assignment i.e., she refused to try to write, from memory, any of the words of the Pledge of Allegiance. Ms. Oliver did, however, comply with the Springsteen assignment by writing a brief reflection regarding the song.

The following day, prior to returning the assignments to his students, Mr. Arnold spoke to his students about, among other things, the impact of not completing assignments in other classes.  After he made his remarks, Mr. Arnold returned the ungraded assignments to his students.

Ms. Oliver claims that the Pledge writing assignment was an attempt by Mr. Arnold to compel her to pledge allegiance to the flag of the United States.  Her claim is completely false.  Mr. Arnold's purpose was not to compel her to pledge allegiance to the flag; his purpose was to teach her that we often use words without thinking about them or understanding their meaning.

Ms. Oliver claims that the Pledge assignment violated her First Amendment rights.  Mr. Arnold vehemently denies this claim.  Mr. Arnold did not violate any of Ms. Oliver's First Amendment rights.  Mr. Arnold was, instead, trying to provide Ms. Oliver with an education. Mr. Arnold's purpose was to teach her the importance of thinking about words which we sometimes recite, hear or sing without any thought or reflection about their meaning.

Ms. Oliver claimed that, after she refused to participate in the Pledge assignment, Mr. Arnold retaliated against her by giving her a zero on the Pledge assignment.  Mr. Arnold vehemently denies this allegation as the assignment was an ungraded assignment.  Mr. Arnold did not give her a zero for the assignment. Mr. Arnold never threatened to give her a zero for the assignment.

Mr. Arnold never intended to give her, or anyone else, any grade for the assignment. Mr. Arnold did not give her, or anyone else, a grade for the assignment.

Ms. Oliver claims that, after she refused to participate in his standard, in-class writing assignment regarding the Pledge of Allegiance, Mr. Arnold made harassing comments to her and treated her more harshly than other students by requesting to see her eyes and by moving her desk. Mr. Arnold vehemently denies this claim. Mr. Arnold did not retaliate against Ms. Oliver in any way for her failure to comply with the Pledge assignment.

Ms. Oliver claims that Mr. Arnold retaliated against her by making harassing comments to her. Mr. Arnold vehemently denies making any harassing comments to Ms. Oliver. To the extent that any of his statements could possibly be interpreted as being either harassing or directed at her or both, Mr. Arnold denies that those alleged comments were intended to be harassing, denies that those alleged comments were directed at Ms. Oliver and denies that those alleged comments were motivated by any retaliatory intent. Mr. Arnold was not motivated by any retaliatory motive toward Ms. Oliver; he was simply trying to teach his students, including Ms. Oliver, to think about the words they hear, recite and sing.

Ms. Oliver claims that Mr. Arnold retaliated against her by requesting to see her eyes and by moving her desk. Mr. Arnold vehemently denies this claim. Mr. Arnold treated Ms. Oliver the same way he treated every other student in his classroom. To the extent that Mr. Arnold may have asked to see Ms. Oliver's eyes or to the extent that Mr. Arnold may have moved Ms. Oliver's desk, those alleged actions were motivated by a legitimate and reasonable desire to maintain proper classroom management and not by any retaliatory intent on the part of Mr. Arnold toward Ms. Oliver. In any case, such actions cannot, as a matter of law, form the basis for a First Amendment retaliation case. The First Amendment of the United States Constitution simply does not reach such mundane and trivial matters as a teacher's legitimate and reasonable efforts to maintain management of his or her classroom. Mr. Arnold did not retaliate against Ms. Oliver in any way; he treated her the same way he treated every other student.

Ms. Oliver claims that Mr. Arnold retaliated against her by playing a Christian music song in class and staring at her while doing so. Mr. Arnold vehemently denies this claim. Though Mr. Arnold played music in his classroom on occasion, he never directed a song at any particular student. Additionally, the musical selections were eclectic and not limited to any one genre.

Ms. Oliver claims that Mr. Arnold retaliated against her by publically recognizing Ms. Oliver for her success in the debate team. Mr. Arnold vehemently denies this claim. Mr. Arnold's intention in recognizing her accomplishments were just that, a recognition of a student for her outstanding work.

In this case, Ms. Oliver is claiming mental anguish damages. Mr. Arnold denies injuring Ms. Oliver in any way. To the extent that Ms. Oliver suffered mental anguish, it was caused by the actions of others, not Mr. Arnold. Mr. Arnold is not liable to Ms. Oliver for any damages.

## Jurisdiction

This Court has jurisdiction to hear this case because Plaintiff's cause of action arises under a federal statute: 42 U.S.C. § 1983. Thus, this Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

Defendant contends, however, that in light of his upcoming Petition for Writ of Certiorari which will include a request for review based on the denial of qualified immunity, the Supreme Court's willingness to summarily reverse denials of qualified immunity, and the fact that qualified immunity is immunity from liability *and suit*, the Court should stay proceedings (including trial) in this matter until the Supreme Court decides Defendant's Petition for Writ of Certiorari.

## Motions

Plaintiff's First Motion In Limine, Dkt. # 193.

Defendant's Motion to Stay, Dkt. # 196

Defendant's First Motion in Limine

## The Parties' Contentions

<u>Plaintiff's Contentions</u>

Ms. Oliver contends that on September 20, 2017, Defendant Benjie Arnold compelled her to engage in expressive speech by requiring her to write the words of the Pledge of Allegiance and that he did so knowing she refrained from reciting the Pledge of Allegiance and that he did so despite being instructed by Assistance Principal Kimberly Walters that Ms. Oliver was not to be required to recite the Pledge of Allegiance.

Ms. Oliver contends that the Defendant gave the Pledge of Allegiance assignment with the intent to inculcate in his students, including Ms. Oliver, his own political ideology and that any pedagogical intent the Defendant purported to have was mere pretext.

Ms. Oliver contends that, beginning on September 21, 2017, and continuing throughout the rest of the semester, the Defendant engaged in a pattern of behavior in retaliation for her refusal to conform to his political ideology, including requiring her to move desks, admonishing her because he could not "see her eyes," and speaking derisively about her academic accomplishments.

Ms. Oliver contends that, as a result of the Defendant's actions, she suffered mental anguish for which she receives regular mental health treatment and for which she seeks compensation.

<u>Defendant's Contentions</u>

1.  Mr. Arnold contends that he was not compelling students to pledge allegiance to the American flag with the timed, in-class Pledge writing assignment. The purpose of the Pledge in-class writing assignment was curricular and not to compel patriotism. The purpose was teach students, through their own experience, that people repeat things by rote, without thinking about what they are actually saying. The lesson is borne out every semester because the vast majority of students, who recite and/or hear the

Pledge every school day of elementary, middle, and high school, do not know the words and cannot write them down.

2.      Mr. Arnold contends that Ms. Oliver was not engaged in First Amendment protected activity when she declined to participate in the Pledge in-class writing assignment. No reasonable person would have understood her not writing the words as part of the timed, in-class writing assignment to have been First Amendment protected activity.

3.      Mr. Arnold contends that he did not retaliate against Ms. Oliver in any way, but instead treated her like he treated every other student. He enforced the class expectations with her in the same manner as he did with every other student. He took no action against Ms. Oliver because of her not participating in the Pledge assignment.

4.      Mr. Arnold contends that he is entitled to qualified immunity on all of Plaintiff's claims. The in-class Pledge writing assignment was not an attempt to compel patriotism, but a curricular assignment and he did not violate any constitutional right. Nor did Mr. Arnold violate any constitutional right by allegedly retaliating against Ms. Arnold; he did not retaliate against her. Moreover, any constitutional right that was allegedly violated was not clearly established as there is no U.S. Supreme Court case, or any case from the Fifth Circuit Court of Appeals, clearly establishing the violation of a right in this case.

## Admissions of Fact

Mari Oliver completed her Freshman year of high school at Klein Oak High School, a school that is part of the Klein Independent School District. Ms. Oliver's Freshman year was the 2014-2015 school year.

Mari Oliver completed her Sophomore year of high school at Klein Oak High School. Ms. Oliver's Sophomore year was the 2015-2016 school year.

Mari Oliver completed the Fall semester of her Junior year of high school at Klein Oak High School. Ms. Oliver's Junior year was the 2016-2017 school year.

Mari Oliver did not complete the Spring semester of her Junior year of high school at Klein Oak High School. Plaintiff was homeschooled during the Spring of 2017.

Mari Oliver completed her Senior year of high school at Klein Oak High School. Ms. Oliver's Senior year was the 2017-2018 school year.

Mr. Arnold taught Sociology during the Fall of 2017. Ms. Oliver was a student in his class.

## Disputed Facts

On August 17, 2017, Defendant participated in a meeting organized by Klein Oak High School Assistant Principal Kimberly Walters. At that meeting, Ms. Oliver's teachers were instructed that Ms. Oliver refrained from reciting the Pledge of Allegiance and that she should be permitted to do so.

On September 20, 2017, Defendant gave an assignment to Ms. Oliver and her classmates in his Sociology class that consisted of the students listening to Bruce Springsteen's "Born in the U.S.A." and writing their thoughts about the song. He then instructed the students to write the words of the Pledge of Allegiance.

On September 21, 2017, Defendant delivered the following soliloquy to Ms. Oliver and her classmates:

Okay. Your assignment yesterday was to write the pledge. If you have a math class and that teacher gives you ten problems to do and you say you don't want to do them, tell me what your grade is. It's a zero. And you have the option to do that. But what you've done is leave me no option but to give you a zero. And you can have all the beliefs and resentment and animosity that you want, but I made it clear

yesterday. Writing it is not something you pledge. But again, and I know the sticker's gone, but I used to have it and it said, "America, love it or leave it," and if you can tell me two countries you'd rather go to, I will pay your way there, if they're communist or socialist, which most of Europe is socialist and it's crumbling, or its communism, but if you ever come back you have to pay me twice what it cost me to send you there. And you can complain--you know, there's a lot of things I complain about, so when it comes time in November I go vote, or I protest, in writing, and legal. Those are the ways we do it in America. Where a country will crumble is when people coming into a country do not assimilate to that country. That does not mean you forget Day of the Dead and whatever culture maintain your language. That doesn't mean that, but you're not going to drive on the left side of the road and you're not gonna impose Sharia law, because it's not this country. But what is happening, and I can say it a lot more than you, because I've lived longer--it's almost as America is assimilating to those countries. And when that happens, then as Nikita Kruschev [UNINTELLIGIBLE] Russian once and I'll never forget seeing it. He was speaking at the UN and he took his shoe off, which some--is a custom of some people, they hit, because it's like they're putting the sole of their foot on you and they--he hit and he said, "We will conquer the free world and never fire a shot." And of course I was in high school and I said, "Bring it on you communist pig, 'cause we'll form a gang and we'll whoop your butt. Bring it on!" Patriotism, I guess. Maybe stupidity. But think about it. "We'll conquer your country and never fire a shot." Sort of like, after it rains and there's a mud puddle and it looks sort of crusted over and you think that it's solid and you step on it. You've got mud all over them Air Jordans all the way up to your ankle, because you thought it was firm. You thought it was solid, but it wasn't. And I'll never--even if you ever see a picture of him [UNINTELLIGIBLE] He was about five-foot-five by about five-foot-two. That's how squat he was. He just [UNINTELLIGIBLE] three things [UNINTELLIGIBLE]. So one day we had a spy plane fly over Cuba and we saw all these holes in the ground. My hand is earth. This is a silo. And when I went on a wheat harvest, by the time you got to Canada the price of wheat had dropped so much that the people raising wheat didn't want to sell it. So they would put it in a silo and this would fill up with wheat. And they would save it 'til the market went up the next year, and then they would sell it. That's a silo. Well, what we saw in Cuba was a silo but it was underground. Special [UNINTELLIGIBLE] And then we saw about four or five ships coming from Ru--from Russia to Cuba and on the deck of these ships we knew that they were missiles, even though they'd covered it with camo netting. And those missiles were going to Cuba to put 'em in there and strike anywhere in America. So John Fitzgerald Kennedy put up a naval blockade. International waters. It wasn't lawful, but America said those missiles are not going to go to Cuba. And you can sit there

and say, "Well, that was wrong because they get to go wherever they want." Okay. So keep your house when the guy next to you has to put a sign out saying that he's a sex offender. And welcome him to the neighborhood. That's fine. And maybe that person needs that kind of love. And if you didn't hear, in Houston, there was a--he was a mariachi teacher, and the principals also got removed. She hired him, but she was paying him out a different account, illegally. The guy had about five counts of molestation, lewd exposure to young people, and there he was working in the school system. So you can say, "Well, he needs a second chance." Tell that to the people that he abused. Tell that to those kids. So you can be as benevolent as you want, 'cause it ain't hitting you. It ain't hitting you. And the odds are, unless you're in an apartment--some apartment somewhere--you have a fence around your back yard. Why? To keep things out. You have a lock on your door to keep things out. But the same people want open borders. And even the Pope, which I think the Pope's got a lot of good i--and I'm not Catholic. I'm not saying this--but he's against [UNINTELLIGIBLE]. Look at the Vatican. It's got a wall all the way around it. For what? So see sometimes you see or hear something like yesterday's song. It is probably one of the most anti-American songs ever written. And it's got that catchy, catchy lyric. And no one else knows the words. So I had some students that were bashing the song because they thought it was about America, but then they're going to find out eventually that it was one of the biggest American bashing songs there was. But it's got that catchy lyric. "Born in America." Bruce Springsteen says [UNINTELLIGIBLE] But anyway, so some people were against it simply because it was U.S.A. America. [UNINTELLIGIBLE] You can protest here. And I was a senior in high school [UNINTELLIGIBLE] I was a junior in high school when that blockade went up. So at the orphanage they brought in these big backhoes and rope and we built a bomb shelter. They did. And it had the cinder blocks, you know, grey blocks, steel rods, concrete, they put a four-foot dome over it and then covered it with dirt. [UNINTELLIGIBLE] On this side of the wall, going down the middle, that's where the girls would be. On this side of the wall was where the guys would be, if there was a nuclear attack. If there was ICBMs. 21 miles from where I was raised there was the headquarters for the big ole B-52 bombers, so we knew we were going to be a target. This bomb shelter was also served as a tornado shelter because there's lots of tornadoes in southwest Oklahoma. And this was your bed--hit the previous image--this is your bed and here's the wall. And at night when you decided to go to bed you would flip it down, there would be a chain and you'd pull about an inch and a half two inch piece of foam, and that was your bed. During the day it would be up and you had all this area for recreation. And I say recreation, but really they bombarded us with the fear of going to hell. You gotta be this, you gotta be this, so you know I practically memorized the whole bible out of fear, not understanding, but out of

fear and we had bicycles that we could generate electricity. We had enough--we had three months of canned goods, a water supply. We were ready. And they did that all in about two weeks, because there's some ships heading toward Cuba. The world was awaiting it. Are they going to turn around? Are they going to confront U.S.A.? Is there going to be a conflict? And about two miles before the blockade, which was illegal--international waters--they turned around. About two months later, Nikita Kruschev resigned. I'm not sure he did resign. I doubt it. He probably got removed to go take care of a garden somewhere because he embarrassed Russia. And uh.. I--I never figured it out. We--We do fire drills here. We used to do civil defense drills. [Imitates the sound of the alarm] Whatever would go off and you'd get under your desk. And you know if there's a nuclear bomb what is that desk gonna prevent from happening? But we followed the instructions: "Get under your desk. Get under your desk." But again, how close are we to that now? You know, we've got the "rocket man," which some of you could say that's disrespectful. That's not his name. But he's the dictator of North Korea and he keeps violating United Nations law. And you could say, "How come the United Nations gonna tell them what to do?" How come a cop tells you to put on a seatbelt? How come a cop tells you not to talk on a cell phone [UNINTELLIGIBLE]? Because some people need regulation. Some people need that. 'Kay, this is gonna be precarious, in a way, because I messed it up yesterday and so, when I mess things up, royally, then I make it up to you [UNINTELLIGIBLE] Okay, so if you've--On that paper you have, if you see a name--a name, not an initial, okay?--call it out and give it back to that person.

Plaintiff alleges that, on August 24, 2017, the Defendant stated that sitting for the Pledge was a privilege, not a right, and that people who sit for the Pledge are unappreciative and disrespectful, stating that they do not work and all they do is take from society.

Plaintiff alleges that Defendant's purpose in assigning his Sociology students the task of writing the Pledge of Allegiance was to inculcate his own political beliefs and ideology in his students.

Plaintiff alleges that Defendant retaliated against her for her refusal to write the Pledge of Allegiance.

Plaintiff alleges that Defendant's actions resulted in mental anguish.

Defendant denies saying that sitting for the Pledge was a privilege and not a right, as stated by Ms. Oliver.  Defendant also denies saying that people who sit for the

Pledge are unappreciative, disrespectful, or that they do not work and all they do is take from society.

Defendant denies that he was attempting to compel students to pledge allegiance to the American flag through the in-class, timed Pledge writing assignment.

Defendant also denies that he was trying to inculcate his own belief through the assignment, but instead contends that the assignment had a curricular purpose.

Defendant denies that the in-class Pledge writing assignment was a graded assignment.

Defendant denies retaliating against Ms. Oliver for any reason.

Defendant denies that his actions resulted in mental anguish or in any damages.

Mari Oliver only had Benjie Arnold as a teacher during the Fall of 2017.

## Agreed Applicable Propositions of Law

A teacher is entitled to qualified immunity if he did not violate a constitutional right.

A teacher is entitled to qualified immunity if he did not violate a clearly established constitutional right.

## Contested Issues of Law

Plaintiff's Contested Issues of Law

Arnold was acting under color of law.

Plaintiff contends that LaShan Arceneaux's email to Dr. Brian Greeney, Kimberley Walters, and Margaret Bollato, dated, Nov. 30, 2015, met the notice requirement of Tex. Educ. Code.

Plaintiff contends that LaShan Arceneaux's email to Bret Champion and Dr. Brian Greeney, dated Nov. 14, 2016, met the notice requirement of Tex. Educ. Code.

Plaintiff contends that written coursework assigned by a teacher violates a student's First Amendment free speech right when the teacher assigned the work

with the intent to inculcate his own beliefs and views concerning matters of patriotism, nationalism, or religion.

Defendant's Contested Issues of Law

Defendant contends that in-class writing assignments do not implicate student First Amendment compelled speech rights.

Defendant contends that the in-class, timed Pledge writing assignment was not an attempt to compel students to pledge allegiance to the American flag.

Defendant contends that a teacher's motive in assigning an in-class writing assignment is immaterial in the qualified immunity analysis.  Regardless, Defendant did not have an improper motive in issuing the Pledge writing assignment.

Defendant contends that he is entitled to qualified immunity because he did not violate any constitutional right, and certainly none that were clearly established. Moreover, neither Plaintiff nor this Court have identified a case clearly establishing a right allegedly violated by Arnold with the requisite degree of specificity required by the U.S. Supreme Court and Fifth Circuit jurisprudence.

Defendant contends that Plaintiff did not engage in constitutionally protected activity with regarding to the in-class Pledge writing assignment.

Defendant contends that none of his actions were retaliatory and none would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

Defendant contends that none of his actions were substantially motivated against any exercise of constitutionally protected conduct.

Defendant contends that he did not cause Plaintiff any mental anguish, and certainly no damages that are cognizable under the law.  Any mental anguish suffered by Plaintiff was due to other causes, people, and/or events.

**Exhibits**

See attached Exhibit Lists.

**Witnesses**

See attached Lists of Witnesses.

### Joint Statement

"If any other witnesses will be called at trial, their names, addresses, and subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial."

## Settlement

The Parties have engaged in settlement discussions throughout discovery and while this case was pending at the Fifth Circuit. At this time, however, there are no live settlement offers.

## Trial

(a)  The Parties have requested a jury trial.

(b)  The trial of this matter is expected to last three-five days.

(c)  Plaintiffs anticipate all witnesses will be available at trial;

Defendant: As trial has not yet been set, it is impossible to answer this question with certainty. That said, at this time, it is unclear whether Ms. Walters and other witnesses will be available for trial. Ms. Walters is no longer employed by Klein ISD and may have moved. Additionally, it is unclear whether Ms. Gallardo will be available for trial. Upon information and belief, Ms. Gallardo is a college student and her precise whereabouts are unclear at this time. Once a trial date is set, Defendant will notify the Court if additional problems exist regarding the availability of witnesses.

 and

(d)  Plaintiff's attendance at trial will require interstate travel that could be disrupted by further developments in the COVID-19 pandemic, as well as state and federal government responses thereto.

As for Defendant, he notes the following problems and existing significant deadlines during the first six months of this year:

a. Current and future problems posed by the on-going COVID-19 pandemic.

b. Mr. Valenzuela is scheduled to attend and speak at the UT School Law conference on February 17-18, 2022.

c. Mr. Brandt will be in trial in *Davis v. Terry*, No. 3:16-cv-02548-L, U.S. District Court for the Northern District of Texas, Dallas Division, beginning on March 1, 2022. This is a special setting. This case concerns Fourth Amendment claims of excessive deadly force.

d. Mr. Valenzuela's wife is scheduled to be out of State at a medieval literature conference at which she was invited to present a paper on March 2-6, 2022. Mr. Valenzuela still has young, school aged children living at home (the DFW area), and trying a case in Houston during this timeframe would pose a very severe hardship.

e. Mr. Arnold's Petition for Writ of Certiorari is due on March 15, 2022.

f. Mr. Brandt is scheduled to go to trial in *Diouf v. Lane*, No. 321675-0, 169th District Court, Bell County, Texas on April 11, 2022.

g. Mr. Brandt is scheduled to go to trial in *USAI, LP v. Town of Highland Park*, No. DC-20-08213, on April 11, 2022.

    h. Mr. Brandt is scheduled to go to trial in *USAA Casualty Insurance Company v. Garland ISD*, No. DC-21-09890, on April 12, 2022.

    i. Mr. Brandt and Mr. Valenzuela are set for trial in *Coronado v. City of Mansfield, Texas*, No. DC-20-16161, 191st District Court, Dallas County, Texas, on the trial docket of May 9, 2022.

### Additional Required Attachments

(a)     Proposed questions for the voir dire examination.

See Plaintiff's and Defendant's attached proposed voir dire examinations.

(b)     Proposed Jury Charge. Please see attached.

(c)     Please see Plaintiff's and Defendant's attached memorandums of law.

_____      _____
          Date                                             LEE H. ROSENTHAL
                                                    CHIEF UNITED STATES DISTRICT JUDGE

APPROVED:

\_\_Randall L. Kallinen_____     _____
Counsel for Plaintiff(s)                 Date

 /s/ Francisco J. Valenzuela\_\_\_\_     _____
Counsel for Defendant(s)                Date