IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARI LEIGH OLIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BENJIE ARNOLD, individually, | § | Civil Action No. 4:17-cv-3234 |
| | § | |
| Defendant. | § | |

### DEFENDANT'S MEMORANDUM OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Benjie Arnold ("Arnold") submits this Memorandum of Law regarding the First Amendment principles at issue and the proper method of determining Arnold's qualified immunity defense.

**A.   Background**

Plaintiff Mari Oliver ("Oliver") brings a First Amendment compelled speech claim against Defendant Benjie Arnold ("Arnold") alleging that he attempted to compel her to pledge allegiance to the American flag when he asked his students to write as many words of the Pledge of Allegiance as they could in one minute.

Oliver also claims that Arnold retaliated against her for not participating in the Pledge assignment. Oliver contends that the alleged retaliation took the form of allegedly harassing comments, moving where she sat in class, and playing music directed at her.

Arnold has asserted his entitlement to the affirmative defense of qualified immunity. .

**B.   Qualified Immunity**

Qualified immunity is a robust defense which "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)). To establish that qualified immunity does not apply to the defendants, a plaintiff must prove that the defendants (1) violated a constitutional right, and (2) "'that right was 'clearly established' at the time of the challenged conduct.'" *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). The "clearly established" question is "a doozy" for plaintiffs. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The plaintiff has the burden of demonstrating that the official violated a constitutional right which was "clearly established" at the time of the challenged conduct. It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality. *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018) ("it is Junior's burden to overcome qualified immunity, not Johnson's burden to show that qualified immunity applies."). "[E]xisting law must have placed the constitutionality of the [official]'s conduct beyond debate." *D.C. v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018).

In its analysis, courts "'must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Rich*, 920 F.3d at 294 (citation omitted). "'[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'" *Id*. at n. 4. The analysis depends upon whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original). "Abstract or

general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. *Wesby*, 138 S. Ct. at 590. A rule is too general if the unlawfulness of the official's conduct does not follow immediately from the conclusion that the rule was firmly established. *Id.*

"In sum, [qualified immunity] 'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" *Rich*, 920 F.3d at 294 (citing *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (emphasis added); *see also Morrow*, 917 F.3d at 876 (the Supreme Court's fourth commandment concerning qualified immunity is that courts "must think twice before denying qualified immunity"). "[E]ducators are rarely denied immunity from liability arising out of First–Amendment disputes." *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)) (emphasis added). At present, only Supreme Court precedent unequivocally "qualif[ies] as controlling authority for the purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591, n. 8.

Qualified immunity embodies not only an immunity against the threat of liability, but also an entitlement not to stand trial or face the other burdens of litigation, so long as the official did not violate clearly established federal law. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Such entitlement is an immunity from suit rather than a mere defense to liability; it is effectively

lost if a case is erroneously permitted to go to trial. *Id*.; see also *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (citing *Mitchell*, 472 U.S. 511).

C. **Qualified Immunity and Compelled Student Speech**

Public school students cannot be compelled to pledge allegiance to the American flag. *See West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943). In *Barnette*, the law required all students to participate in the Pledge's recitation and ceremony – to actually pledge allegiance to the American flag – without exception. *Barnette* "did not analyze the idea of making a pledge without actually believing in the words uttered." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 350 (5th Cir. 2017) (quoting *Barnette*, 319 U.S. at 633).[1]

"[I]t is clearly established that a school may compel some speech. Otherwise, a student who refuses to respond in class or do homework would not suffer any consequences. Students, moreover, generally do not have a right to reject curricular choices as these decisions are left to the sound discretion of instructors." *Id*. For example, schools can prohibit plagiarism, assign students to write "opinions" such as Justices Scalia and Ginsburg would write, and compel (for "legitimate pedagogical reasons") a student to recite lines from a play which the student understands to be contrary to her religious beliefs. *Id*.

Finally, the Fifth Circuit recognized that

---

[1] *Brinsdon*, for the first time, held that a teacher's "impure motives" could result in the denial of qualified immunity for a compelled speech claim based on a curricular assignment. *Oliver v. Arnold*, No. 20-20215, __ F.4th __, 2021 U.S. App. LEXIS 37036, *33 n. 6, **40-43 (5th Cir. 2021) (Elrod, J. dissenting, Duncan, J. dissenting). Prior to *Brinsdon*, courts did not analyze qualified immunity for compelled speech claims based on the motive, pure or otherwise, but instead on whether speech was being improperly compelled. *Oliver*, 2021 U.S. App. LEXIS 37036 at **32-34 n. 6, 40-43. Indeed, in *Barnette*, the Board of Education's undisguised motive was promoting patriotism, and the Court did not find that fact to be problematic. *Id*. at **40-41. The problem in *Barnette* was not the motive, but that promotion of patriotism became compulsion of patriotism. *Id*. As explained by seven judges of the Fifth Circuit dissenting to the denial of rehearing *en banc*, in grafting an "impure motive" requirement to the compelled speech analysis, *Brinsdon* was wrongly decided and should be overruled. *See Id*. at **28-45. This argument is being raised herein to preserve it for appeal, if necessary. Regardless, the evidence will show that Arnold had no improper motive to compel patriotism.

**Defendant Benjie Arnold's Memorandum of Law** Page 4
(28721/722254)

> First Amendment protections have traditionally been for 'matters of adult public discourse,' and it is not true that 'the same latitude must be permitted to children in a public school.' *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986). The First Amendment rights of students 'are not automatically coextensive with the rights of adults in other settings.' *Id*. Students must be afforded freedom of speech in school, but the right is 'applied in light of the special characteristics of the school environment . . . .' *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506… (1969).

*Id.* at 351.

The court concluded that the teacher and principal did not violate clearly established law "when compelling a non-operative recitation of the Mexican pledge," and that qualified immunity was properly granted. *Id*.

At no time has Oliver or this Court identified a case that clearly established a right violated by Arnold in assigning students to write as many of the words of the Pledge in one minute, yet qualified immunity was denied.

### 1. Conduct Is Not Necessarily Protected Speech.

Conduct is not constitutionally protected speech merely because the person engaging in the conduct intends thereby to express an idea. *Rumsfeld v. FAIR*, 547 U.S. 47, 65-66 (2006) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)); *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Courts extend First Amendment protection "*only* to conduct that is inherently expressive." *FAIR*, 547 U.S. at 66 (emphasis added).

To determine whether conduct "possesses sufficient communicative elements to bring the First Amendment into play, [the Court has] asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410-411 (1974)).

Conduct is not "inherently expressive" if the expressive component of the actions "is not created by the conduct itself but by the speech that accompanies it." *FAIR*, 547 U.S. at 66. The need for such explanatory speech "is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection…" *Id*. "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id*. As the Supreme Court stated in *FAIR*, an individual's announcement of an intention to express his disapproval of the IRS by not paying taxes does not convert the failure to pay taxes into protected expression under the First Amendment. *Id*.

In cases concerning allegedly expressive conduct, context is king. In *FAIR*, the Court held that the Solomon Amendment requiring law schools to treat military recruiters in the same manner as they treated non-military recruiters did not violate the law schools' freedom of speech. *Id*. at 68. The Court contrasted the context of *Johnson*[2] in which it found the flag burning at issue to be sufficiently expressive to be protected under the First Amendment, with the context of law schools requiring military recruiters to recruit outside of the law school: "[a]n observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *FAIR*, 547 U.S. at 66.

---

[2] In *Johnson*, the Court recognized that it has not "automatically concluded…that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have *considered the context* in which it occurred." *Johnson*, 491 U.S. at 405 (emphasis added). In *Johnson*, the Court described the context for the flag burning at issue and found that the, "expressive, overtly political nature of this conduct was both intentional and overwhelmingly apparent." *Id*. at 399, 406. Specifically, the plaintiff was one of about 100 demonstrators who raucously marched through downtown Dallas chanting, spray painting buildings, distributing literature, and giving speeches. *Id.* at 399-400. Johnson burned a flag while other demonstrators chanted, "America, the red, white, and blue, we spit on you." *Id*. at 399. The flag burning was the culmination of the demonstration coinciding with the Republican Party's re-nomination of President Reagan. *Id*. at 406. The expressive nature of the conduct (burning the flag) was obvious and unmistakable, as recognized by the Texas Court of Criminal Appeals and the U.S. Supreme Court. *Id.* at 400, 406 (quoting *Johnson v. State*, 755 S.W.2d 92, 95 (Tex. Crim. App. 1988)).

The same action can constitute protected speech or not, depending on the context. For example, burning a flag is not *ipso facto* expressive conduct. Someone might burn a flag to retire it respectfully or to signal disapproval as part of a protest. The context of the burning is essential to determining whether it is constitutionally protected expressive conduct. *Johnson*, 491 U.S. at 405 ("We have not automatically concluded, however, that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have considered the *context* in which it occurred.") (emphasis added).

### D.   Qualified Immunity and First Amendment Retaliation Claims

In order to prevail on a First Amendment free-speech retaliation claim, a plaintiff must show that (1) she was engaged in a constitutionally protected activity;[3] (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Brinsdon*, 863 F.3d at 351.

Courts "should refrain from second-guessing the disciplinary decisions made by school administrators." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167-68 (5th Cir. 2011) (internal quotations and citations omitted). Classroom management is completely within the purview of a teacher and restricting a student's speech when the topic disrupts the work and discipline of the school does not constitute a constitutional violation. *See Morgan v. Swanson*, 659 F.3d 359, 402 (5th Cir. 2011) (citing to *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)); *see also Bell v. Itawamba Cnty. Sch. Dist.*, 799 F.3d 379, 389-90 (5th Cir. 2015).

---

[3] *See supra* pp. 5-7.

**Defendant Benjie Arnold's Memorandum of Law**                                                                                        Page 7
(28721/722254)

At no time has Plaintiff or this Court identified any case showing that Arnold violated a clearly established right in the retaliation context, yet qualified immunity was denied to Arnold.

## CONCLUSION

The Court should apply the legal principles explained herein and grant Arnold qualified immunity.

Respectfully submitted,

 /s/ Thomas P. Brandt
**THOMAS P. BRANDT**
  State Bar No. 02883500
  tbrandt@fhmbk.com
**FRANCISCO J. VALENZUELA**
  State Bar No. 24056464
  fvalenzuela@fhmbk.com

**FANNING HARPER MARTINSON
  BRANDT & KUTCHIN, P.C.**
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT
BENJIE ARNOLD**

## CERTIFICATE OF SERVICE

This is to certify that on January 18, 2022, this was supposed to be electronically filed with the clerk of the Court for the United States District Court, Southern District of Texas, using the electronic case filing system of the Court, and that it reported that it was delivered to all attorneys of record.

 /s/ Thomas P. Brandt
  **THOMAS P. BRANDT**